And we'll proceed with the next case on the oral argument calendar, which is Social Life Network v. LGH Investments. Good morning. May it please the Court, Marjorie Santelli for Appellant's Social Life Network. I'd like to reserve three minutes of rebuttal time. I'd like to start with the first issue in this case, and I think it's the most important, which is an interpretation of the California usury statute. And, essentially, the question is, in Section 25118b.1, what evidences of indebtedness are supposed to be aggregated in order for this exception to apply? Is it, are we supposed to aggregate the amount of the loan transaction or the loan, or is it something else, all the, as LGH maintains, all the notes that the borrower ever sold? It's not clear what it encompasses, but it's basically whatever's on the debtor's books. So, California has three primary rules of statutory interpretation, proceeding with, starting with the plain meaning of the statute. If there's ambiguity, you proceed to legislative history, and then they go to the reasonableness of the proposed construction. So, the plain meaning of the statute, the plain meaning of the language, I could say it probably can be interpreted as ambiguous. It's not crystal clear what is to be aggregated. So, let's assume that we've got an ambiguous statute, a legislative history that doesn't tell us much, and we're down to the third factor. Well, the third factor would be the reasonableness of the proposed construction, which would mean how is this going to work in process. So, in this case, there's, I noted there is an issue of the statute, if you're going to interpret this as the amount of debt on the borrower's books, what exactly are you looking at? Are you looking, is this the debt at the time of the loan? Is it, does it include, are there other factors you can challenge? What if some of the debt on the books was rescinded, or it's just not clear? I mean, and I assume you want to talk about point three, because point two, legislative history, it's just overwhelmingly clear that the legislature intended this aggregation to only apply to the amount of the transaction or the loan. All the legislative history documents keep describing the statute as the amount of a loan, the amount of a loan. So, if they were. But then it uses the phrase aggregate, which implies more than one loan. That's true. So, I. I mean, it's a puzzling statute to me. But there could be more than one loan from more than one lender. Well, then you're into a different transaction. What about more than one loan from the same lender? Yes, I think that's the. Then the lender would know. Yes. We wouldn't have to be concerned about the lender having knowledge of what's on the books. Yes, and I think that, you know, that happens quite frequently, that the lender will have more than one loan. And I think it's supported by, there's some very technical definitions of evidences of indebtedness. If you dig deeper, an evidence of indebtedness is somewhat like a, it's a negotiable instrument. It's an actual document. You're not just talking about a category. It's the thing you bring to the court. So, in that case, it's only the party in the court that's going to have these evidences of indebtedness. Moreover, at that point, you would realize that a paid-off loan wouldn't be counted either, because you can look at the evidence of indebtedness. If it's paid off, it's canceled, or it's returned to the borrower. So, you want to measure this, obviously, by lender that would. . . By transaction, right. Okay, but, well, initially by lender. So, you don't want to aggregate multiple lenders. And then within a single lender, could you aggregate one loan that was given on day one and one loan that was given on day two, or that would be two different transactions and they couldn't be aggregated? I don't know. I mean, that was something I puzzled over, but that's not, since it's not before the court. I mean, I suspect that they could be aggregated in some circumstances, but it might depend on how close they were when they were loaned, if one had been paid off. Certainly, I think if you made a loan on day one and then paid it off and made another loan on day 10, no. They wouldn't be aggregated because the first loan has been paid off. I mean, the other side has all, you know, both of you make fair points on kind of some of the implications of your opponent's respective positions. One thing that your opponents say here is that if this is going to be the rule, your client could have entered into, you know, loans of $200,000 with one lender on day one, another lender on day two, another lender on day three, and each one of those loans would be covered potentially by the usury laws. Right, but I think that that's what the legislature intended. You know, if, as the legislator of history discusses, they were trying to pattern this on the loan threshold that exists in New York statutes, that's precisely what they do. And, you know, the scenario doesn't sound good. Certainly you've got a lender taking out multiple loans, but frequently as our client these are serial borrowing. One loan is used to pay off another loan and so forth. But beyond that speculation, I would say the language of the statute points to the size of a loan, not anything else. Well, all this is, as I understand it, is an exemption from the usury laws. Just because you're not exempted doesn't mean you necessarily win. It just means you don't get the benefit of the exemption. I think that that's so, right. In other words, if you were to prevail here and if there was a conclusion that, no, in fact, this exemption doesn't apply, it doesn't then mean that these loans were usurious. That's a separate inquiry. Correct. Definitely. Right. Yeah. So... You're down to about three and a half minutes. Do you want to deal with the other issues? If you'd like to deal with the... So the statute of limitations for Section 29B of the Securities Exchange Act, it's not something that has, unfortunately, like the usury issue. There's a real paucity of case law on this question. We have tried to sort of narrow our arguments on the statute of limitations because there could be a lot of reasons why this doesn't apply. The issue was that LGH enforced this warrant and our client didn't understand how many shares would be conveyed under it. I think I go into it in the reply brief. There was some terminology that was changed. And so when they claimed entitlement to millions of shares, it kind of took them by surprise and... Took who by surprise? Social link network. But how is that possible? What is it they didn't know or shouldn't have known? It seems like the deal was in writing. That's true. The registration status was knowable. Well, so if you're talking about notice of the registration status, that's only half of the equation. You have to... But you would concede that the registration status could have been discovered in April of 2019. It could have been discovered, but the violation wouldn't be discovered. You know, you need to not just know one element of the violation. You need to know both elements of the violation. What element wasn't knowable? Whether or not they were an unregistered dealer and needed to register. And so mostly you have these broker cases. Prior to 2018, most of these cases dealt with unregistered brokers. A broker, by definition, is somebody who affects transactions and securities on your behalf, on behalf of a third party. Whereas a dealer is somebody who buys and sells securities for his own account, but not as a trader. So there's this line there that says if you're just a trader and you do it intermittently and it's not a part of a business, then you're not a dealer. So if you have one transaction with a dealer, you would have no way of knowing if they run a business doing this, if they qualify as a dealer. It's far... You know, you'd have to... You're arguing that they didn't know what law applied? How is that... You could find out whether they're registered or not. Yes. And your argument is, but we didn't know whether they had to register? Yes. And that's a question... I mean, that is something that's... It's kind of a borderline question, I would say, of fact and law. If you look at the brokerage cases, the courts always made findings that all these behaviors were apparent. This was a well-known broker, or they do brokerage in the industry, so they should have been aware of these circumstances. Whereas in the dealer cases, not only was there no finding that this was obvious, but certainly it's not obvious. Okay. Your time is about expired, so we'll give you a couple minutes for rebuttal. Great. Good morning, Your Honors. I'm Brian Richman from Gibson, Dunn & Crutcher for the appellees. May it please the Court. In 2019, Social Life, a publicly traded corporation, announced to the world in its SEC filings that it planned to raise substantial additional funding. Social Life retained a brokerage firm, J.H. Darby, to solicit investors. Over the next few months, Social Life proceeded to sell nearly a million dollars in debt securities to investors throughout the United States. Now, years later, and after Social Life's stock price has moved more favorably for them, Social Life, in a series of lawsuits filed here in California, in Florida, and New York, claims the right to take back every security that Social Life has sold. However, neither federal law nor California law permits that gamesmanship, and the court below got this exactly right and dismissed Social Life's claim. So let's maybe go to the state law issue. Where do you see in this statute the approach of aggregating the loans of multiple lenders? 25118B1, Your Honor, it says to aggregate one or more evidences of indebtedness that aggregate at the time of issuance to at least $300,000. The question is from multiple lenders. I don't see the words multiple. Well, what do you want us to do with the word transaction? It refers to, you know, in the singular, and the legislative history talks about a transaction. So could you circle back to Judge Bress's question with that in mind? Sure, Your Honor. To address the legislative history point, referring to something as a transaction, it's a shorthand in the legislative history. There are plenty of transactions. I know that it is. And his question really is where do you get to, what's the strongest argument that we should consider aggregating from multiple lenders? Because the difficulty, of course, is the practical one. How are they going to know? The fact that there is no textual limitation in 25118B1 that says a single lender. There are other provisions in the statute that refer to a lender. The New York statute that Social Life refers to refers to a single lender. That language does not appear in B1. I mean, the oddity of your position is that I'm just looking at the text. I mean, what would happen is that a loan could begin as covered by the usury law and then over time move out of that coverage. Why would that make sense? I think what's happening here, Your Honor, is the legislature is looking for a certain type of borrower that it doesn't think is worth applying the public policy of the state for protection. And it does it in two ways in 25118. It says in F, we're first going to have this gatekeeping rule. Are you the type of borrower that could reasonably be assumed to be capable of protecting your own interests? That's the initial, do you look like you might be? And then in A, B1, B2, it looks to specific criteria. Is there some type of objective fact that proves you are that level of sophistication? You are the type of person we're not going to allow to come in and invoke the usury law. And what I think B1 is saying is, look, if you travel around the state and you sell $300,000 in debt securities, we're not going to have you come into court later and say you'd like to take it all back. We could tell from your ability to raise that money that you are sufficiently sophisticated on the one hand. I think that is what the legislature is looking at. And then I think there's an equitable component to that as well, Your Honor. If the corporation here, which is admittedly sophisticated, they never challenge that below, if they're going to go around and sell hundreds of thousands of dollars in securities, that corporation should have an opinion on whether it believes those securities are important. So let's just say, I mean, imagine that your client gives $200,000 loan on day one. Absent anything else, they're covered or at least not exempted by the usury law, right? I agree, yes. So then how do you come to learn later that, oh, in fact, it turns out you're exempted? Well, I think there are two issues here, Your Honor. So when we're talking about the exemption, we're not talking about, and I think Your Honor made this point earlier, we're not talking about is the transaction usurious. Correct, correct. We're talking about is this a group of transactions, is this a borrower where the legislature has said, we don't want to hear the usury claim at all. And just to return here, Your Honor, I would say two things in terms of the lender's knowledge. So one, the loans we do not believe are usurious, and I'm happy to get to that for other reasons. But also here, there's no mystery what Social Life was doing. Social Life announced in its SEC-filed financial statements, we're going to raise a bunch of money. They then hired a brokerage firm, J.H. Darby, to solicit investors. And then they admit in their opposition to our motion to dismiss below, they were talking to multiple other investors at the exact same time they were talking to us. In fact, another note of theirs is dated the same day as ours, April 11, 2019. And I think the way they resist that shows the unworkability of their theory. In opposition to our motion to dismiss, they were submitting affidavits and e-mails to try and prove who signed the document first. Did LGH sign it, or did the investor in Florida sign it first? Under the theory that, well, if LGH signed it first, there wasn't $300,000 sitting on the books active right then. I don't think that's really a workable standard, and I think the way they view the statute would really create a lot of absurdity. So to take one example, Your Honor, if Social Life were to sell one note for $400,000, there's no question that is subject to the exemption. But now let's say Social Life goes to the investor and says, I want $400,000. The investor manages two funds, so two separate legal entities, and the investor says, okay, great. Fund A will take $200,000. Fund B will take $200,000. If they sign those documents two minutes apart, Social Life seems to suggest that those notes are not. Well, maybe. I mean, that sort of gets to the question of what does it mean at the time of issuance, and the time of issuance may not mean the exact microsecond. It could mean a time that encompasses a transaction, and you're hypothetical. Perhaps that would be the same time. I don't know. But I guess the issue that I find odd here is the notion that a loan that begins as covered by the usury law, or at least not exempted, would somehow lapse out of that status at some point in time unknown to the lender. That just seems like an unusual state of affairs. I mean, the problem here is that I think if you were to have a standard, and the standard were is Social Life a knowledgeable, capable investor that's a grown-up company able to know what it's doing, we might say yes. But the legislature has defined this with a rule, and rules can sometimes be over- and the question is whether that might be one of these cases here. Right. Your Honor, I would say when it comes to the exemption, and, again, I think there are really two reasons why the legislature has this exemption. So one is an objective test of the sophistication of the company, right? They're capable of raising $300,000. I think once the company crosses that threshold, they've now proven themselves to be in that world. So it is rational for the legislature to go back and say, okay, we're knocking out everything that came before. And, look, I understand Your Honor's point about day one you might not know. But in a lot of cases you do know. When a company announces they're going to raise a substantial amount of money, and they did. They raised nearly a million dollars. People can understand that is coming, that is going to happen, and really the risk for the lender, I mean, the public company could back out of the deal a week later or a month later, but that's not really realistic. When a public company says we're going to raise lots and lots of money, they're probably intending to do that, and you could rely on that somewhat. And then I would just also raise, I think, the equitable component of this statute. I think the legislature is saying, look, if you're a sophisticated company and you go out and you raise hundreds and hundreds of thousands of dollars from investors throughout the state, throughout the country, we're not going to have you come in later and say you get to take everything back. I mean, there are investor protection or there are protection concerns on both ends. Social Life's theory is that you could have companies soliciting people. They hired and paid a brokerage firm to solicit investors and then sold them a bunch of securities they claim are usurious. And I think that is something the legislature could rationally have drawn a line and tried to bring that out. One other point, Judge Bress, you brought up at the time of issuance language, and I would just say two things about this. So first, Social Life on page 12 of their reply disclaims any reliance on that language. So I don't even think the interpretation of that is contested before this court. And then in terms of what that language actually means, if the court were to reach it, we're the only ones who have actually put forth an interpretation of that, and we've cited in our brief examples of how it's used. And I think the best way at the time of issuance is used, it's not referring to every single loan execution must be at the exact same moment. What it is saying is, look, we're going to add up the amount of the various notes, and we're going to do it at the time of issuance of each note. I know it's admittedly a little bit of a clunky way to say it, but if you look at how these words are used in the financial context, and we cite examples throughout our brief where people say, we're going to add up the various securities whose value changes throughout time, we're going to add them up at the time of issuance, and you see that they're aggregating securities that were issued or executed days, months, years apart. And what it's saying is we're not going to do, you know, interim interest rate calculations or things like that. We're just going to look at the face of the loan and add it up that way. I see my time has expired. Thank you very much, Your Honors. We would respectfully urge you to affirm. Thank you, Counsel. We'll give you two minutes for rebuttal. So the first thing I wanted to make clear is that just because you're sliding under the sophisticated company standard or not challenging it, which I think they didn't at the district court because they had a part-time lawyer that was advising the company who may or may not have read the contract, it was just assumed that they wouldn't make that grade. But there's two, this is a separate question. They're talking about what is the amount of the loan or in Subsection B-2, which they don't aggregate, do you have a line of credit for up to $300,000? The fact that Subsection 2 looks more at the line of credit, which doesn't aggregate naturally, but it is sort of, you know, it's like a tab that is up to $300,000. It just looks like two different ways to getting to the same $300,000 threshold. I think it's a separate test. You've got the question about sophistication, and then you go to the first section that looks at your assets on the books. It's very clear as to how that should be determined. And then when you get here, if you're going to actually start looking at loans on the books, there's no guidance at all. How often does this aggregation issue arise? I haven't seen it before. I'm not sure the parties have cited that many cases that even bear on this. There are almost no cases on this. So it's not a widely used statute. That's why we proposed in the brief for possible certification to the New York Court of Appeals, because there's just almost zero. We cited in our brief a couple of cases, but they weren't California cases. They were a New York case, another case applying California law. So I think the only purpose of citing those is that in one case they were presented with two lenders with two notes each. If you'd added them together, it would have been beyond the threshold, but there was nothing obvious enough in the statute that the courts came to the same conclusion at the district court. So I don't think that at least makes clear that the interpretation, the language is not clear in either direction. Okay. Thank you, Counsel. Thank you. Case just argued will be submitted for decision.
judges: THOMAS, CHRISTEN, BRESS